1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 MICHAEL WHITEHEAD,          No. 2:13-CV-0137-CMK

12         Plaintiff,

13     vs.          <u>MEMORANDUM OPINION AND ORDER</u>

14 COMMISSIONER OF SOCIAL
SECURITY,

15         Defendant.

16

17 _____/

18         Plaintiff, who is proceeding with retained counsel, brings this action under

19 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20 Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21 judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22 before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's

23 opposition (Doc. 17).

24 / / /

25 / / /

26 / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on March 7, 2007.  In the application, plaintiff claims that disability began on May 1, 2006.  Plaintiff claims that disability is caused by a combination of "degenerative cervical spondylosis, degenerative lumbar spondylosis, and carpal tunnel syndrome."  Plaintiff's claim was initially denied.  Following denial of reconsideration, and after an administrative hearing, plaintiff's claim was again denied.

On January 5, 2010, the Appeals Council granted review and remanded for further proceedings.  In its remand order, the Appeals Council identified the following issues:

1.    The hearing decision indicates that the claimant has the severe impairment of carpal tunnel syndrome, but does not contain limitations in the claimant's residual functional capacity that correspond to this impairment;

2.    The hearing decision indicates that the claimant has the residual functional capacity for work-related functions that equate to a maximum capability for light work, page 4, but the decision does not contain sufficient rationale with specific references to evidence of record in support of the assessed limitations.  The hearing decision rejects the opinions of the consultative examiner and the state agency consultant that the claimant is limited to standing and/or walking for at least 2 hours in an 8 hour work day.  The hearing decision does not cite any evidence to support the finding that the claimant can stand and/or walk for at least 6 hours in an 8 hour work day; and

3.    The decision indicates that, based on vocational expert evidence, the claimant could perform such past relevant work as assembly line worker and label maker operator.  However, the vocational expert incorrectly cites the Dictionary of Occupational Titles (DOT) code 559.685-018, the code for ampoule filler as past relevant work.  This occupation is significantly different from the claimant's past relevant work as assembly line worker.

The Appeals Council provided the following instructions on remand:

1.    Obtain evidence from a medical expert to clarify the nature and extent of the claimant's carpal tunnel syndrome impairment;

2.    Give further consideration to the claimant's residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations.  In so doing, evaluate the treating and nontreating

source opinions, including the consultative examiner, Dr. Pliam,
and nonexamining source opinions, including the state agency
medical consultant (Exhibit 3F), and explain the weight given to
such opinion evidence.  As appropriate, the Administrative Law
Judge may request the treating and nontreating sources to provide
additional evidence and/or further clarification of the opinions and
medical source statements about what the claimant can still do
despite the impairments.  The Administrative Law Judge may
enlist the aid and cooperation of the claimant's representative in
developing evidence from the claimant's treating sources; and

3.   Obtain supplemental evidence from a vocational expert to clarify
the effect of the assessed limitations on the claimant's occupational
base.  The hypothetical questions should reflect the specific
capacity/limitations established by the record as a whole.  The
Administrative Law Judge will ask the vocational expert to identify
examples of appropriate jobs and to state the incidence of such jobs
in the national economy.  Further, before relying on the vocational
expert evidence, the Administrative Law Judge will identify and
resolve any conflicts between the occupational evidence provided
by the vocational expert and information in the Dictionary of
Occupational Titles (DOT) and its companion publication, the
Selected Characteristics of Occupations.

A second administrative hearing was held on May 24, 2010, before

Administrative Law Judge ("ALJ") Jean R. Kerins.   In a November 20, 2011, decision, the ALJ

concluded that plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): degenerative disc
disease of the cervical and lumbar spines status post cervical fusion and
lumbar diskectomy;

2.   The claimant does not have an impairment or combination of impairments
that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity: claimant can
perform less than a full range of light work; the claimant has the ability to
lift 20 pounds occasionally and 10 pounds frequently; he can stand and/or
walk for at least 2 hours in an 8-hour workday; he can sit for at least 6
hours in an 8-hour workday; the claimant is able to climb ramps and stairs
occasionally, but is never able to climb ladders, ropes, or scaffolds; the
claimant is able to balance, kneel, stoop, crouch, and crawl occasionally,
but is never able to reach overhead, bilaterally; and

4.   Considering the claimant's age, education, work experience, residual
functional capacity, and vocational expert testimony there are jobs that
exist in significant numbers in the national economy that the claimant can
perform.

1  After the Appeals Council declined further review on November 20, 2012, this appeal followed.

2

3  **II.  STANDARD OF REVIEW**

4         The court reviews the Commissioner's final decision to determine whether it is:

5  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

6  whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

7  more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

8  (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

9  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

10  including both the evidence that supports and detracts from the Commissioner's conclusion, must

11  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

12  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

13  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

14  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

15  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

16  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

17  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

19  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

20  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21  Cir. 1988).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

4

# III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in evaluating the opinions of Dr. Pliam, an examining physician, and Mr. Girt, a physical therapist; and (2) the ALJ erred in rejecting his testimony as not credible.

## A.      **Evaluation of the Medical Opinons**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

1  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

2  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

3  without other evidence, is insufficient to reject the opinion of a treating or examining

4  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

5  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

6  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

7  see also Magallanes, 881 F.2d at 751.

8        1.    Dr. Pliam

9        As to Dr. Pliam, the ALJ stated:

10   On a June 2007 orthopedic evaluation (Exhibit 2F), the claimant
     complained of neck pain, headaches, low back pain, and bilateral hand and
11   forearm pain.  Nathan Pliam, M.D., Ph.D., reported that the claimant had
     no tenderness to palpation or muscle spasm of the cervical and lumbar
12   spine; that he had normal range of motion of the cervical spine; and that he
     had forward flexion of 85 degrees, extension of 25 degrees, and normal
13   lateral bending, bilaterally, of the lumbosacral spine.  Dr. Pliam also
     revealed that the claimant had no tenderness or swelling of the wrists,
14   hands, and fingers; that motion of the fingers was within normal limits;
     and that grip strength measured 60/55/55 pounds on the right and 60/60/55
15   pounds on the left.  In addition, Dr. Pliam reported that the claimant sat
     and stood with normal posture; that he was able to arise from a chair
16   without difficulty; and that he could toe and heel walk without evidence of
     weakness of the ankle flexors or extensors.  Sensory examination also
17   revealed no deficits, and a gross evaluation of selectively tested muscles in
     the upper and lower extremities showed no weakness.

18
     The claimant was diagnosed with degenerative cervical spondylosis status
19   post C5-6 fusion, with residual symptoms of neck pain and probable right
     cervical radiculopathy; and degenerative lumbar spondylosis status post
20   decompression of the L4-5 with persistent symptoms of back pain.  Dr.
     Pliam opined that the claimant should be limited to lifting 20 pounds
21   occasionally and 10 pounds repetitively; to stand and walk for 1 to 2 hours
     continuously for a cumulative total of 4 hours per day; and to sit for 2
22   hours continuously for a cumulative total of 2 hours per day.  Dr. Pliam
     noted that if the claimant was sitting, he should be able to move about or
23   change positions as needed for comfort.  Dr. Pliam also determined that
     the claimant was precluded from posturally-demanding activities,
24   including climbing, crouching, crawling, squatting, and kneeling.

25  / / /

26  / / /

6

The undersigned gives significant weight to some of Dr. Pliam's medical opinions, particularly his conclusions relating to the claimant's ability to lift and/or carry, as they are based on medical findings on examination of the claimant and are well-supported by medically acceptable and laboratory diagnostic techniques.  However, some of Dr. Pliam's determinations, including those relating to the claimant's ability to stand, walk, and sit, are not consistent with the objective findings on examination or other substantial evidence of record.

To illustrate, Dr. Pliam reported objective medical findings showing no tenderness to palpation or spasm of the cervical or lumbar spine, no motor weakness, good range of motion, and no significant gait or station abnormalities.  Dr. Pliam further indicated that he did not find any specific radicular signs on examination of the claimant (Exhibit 2F/5).

In addition, on a June 2007 Physical Residual Functional Capacity form (Exhibit 3F), M.L. Tambellini, M.D., a medical consultant employed by the state, opined, in part, that the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; and to sit for about 6 hours in an 8-hour workday.  Dr. Tambellini credibly indicated that, because the claimant had shown no motor weakness, good range of motion, and no significant findings on station or gait, the claimant was able to sit for 6 hours in a workday.

Dr. Tambellini also determined that the claimant was able to stand and/or walk for at least 2 hours in an 8-hour workday; to climb ramps and stairs occasionally, but never able to climb ladders, ropes, or scaffolds; and to balance, stoop, kneel, crouch, and crawl occasionally.  In addition, Dr. Tambellini opined that the claimant was not able to reach overhead, bilaterally, and that he did not have any communicative, visual, or environmental limitations.

The undersigned gives great weight to these determinations [by Dr. Tambellini], as the medical consultant referenced objective medical evidence of record within the report in making his conclusions, including the claimant showing no significant loss of grip strength by Dr. Pliam or any headache limitations. . . .

Plaintiff argues that the ALJ erred in rejecting Dr. Pliam's sit/stand/walk limitations.

Plaintiff argues that, contrary to the ALJ's conclusion, "Dr. Pliam's sit, stand, and walk limitations were consistent with the record as a whole. . . ."  Plaintiff then notes various portions of the record showing: (1) complaints of low back pain since 2006; (2) radiological evidence from 2001 and 2003 showing problems at C5-6 and L4-5; and (3) a diskectomy in 2001.  Plaintiff also notes that Dr. Pliam's assessment is consistent with that of Jim Girt, a physical therapist.

1    The court does not agree with plaintiff that the evidence he cites reveals a flaw in

2 the ALJ's analysis of Dr. Pliam's sit/stand/walk opinion.  The evidence reflects plaintiff's

3 subjective complaints of low back pain, that plaintiff had a diskectomy, and that he has some

4 problems at C5-6 and L4-5, as shown by x-rays.  While this evidence, as well as Mr. Girt's

5 assessment, may be consistent with Dr. Pliam's sit/stand/walk assessment, other evidence of

6 record was not.  Ignored by plaintiff are Dr. Pliam's own objective observations that plaintiff

7 exhibited no tenderness to palpation or spasm of the cervical or lumbar spine, no motor

8 weakness, good range of motion, and no significant gait or station abnormalities.  Dr. Pliam also

9 found no specific radicular signs.  The court agrees with the ALJ that these findings are

10 inconsistent with Dr. Pliam's sit/stand/walk assessment.

11    2.    Mr. Girt

12    As to this source, the ALJ stated:

13     In November 2007, Jim Girt, PT, reported that the claimant's material
    handling capabilities included the "sedentary" physical demand
14     classification (Exhibit 9F).  Mr. Girt also indicated that the claimant's fine
    hand/finger dexterity appeared to be functional but noncompetitive, and
15     that, even if he was allowed to alternate sitting and standing postures as
    tolerated, it did not appear that the claimant could perform work at a
16     sedentary level for long enough periods to be productive.

17     The undersigned has read and considered the records from Mr. Girt.
    However, a physical therapist is not an acceptable medical source under
18     the Act.  Mr. Girt's opinions are also inconsistent with the objective
    medical findings of record and with Dr. Tambellini's conclusions. . . .
19     Furthermore, in May 2009, which was shortly after the claimant's date last
    insured, James Mu, M.D., reported that the claimant's right grip strength
20     was 5/5, which is inconsistent with the allegations made by Mr. Girt
    (Exhibit 13F/5).  Consequently, although the undersigned has considered
21     Mr. Girt's opinions pursuant to SSR 06-3p, the undersigned gives his
    opinions less weight.

22

23 Plaintiff argues that the ALJ failed to consider Mr. Girt's assessment as "other medical source"

24 evidence.  Citing SSR 06-3p, plaintiff contends that the ALJ ". . .failed to provide legitimate

25 reasons for rejecting Mr. Wirt's [sic] functional capacity assessment."

26 / / /

1    The court does not agree.  While the ALJ noted that Mr. Girt was not an

2  acceptable medical source, the ALJ nonetheless specifically cited SSR 06-3p and clearly

3  considered Mr. Girt's assessment as "other medical source" evidence.  In so doing, the ALJ gave

4  Mr. Girt's assessment reduced weight because it is inconsistent with other medical evidence,

5  specifically the objective findings noted by Drs. Tambellini and Mu.  The court finds that this

6  analysis is supported by substantial evidence, namely the objective findings indicating no motor

7  weakness, good range of motion, and no significant findings on station or gait.

8    **B.    Plaintiff's Credibility**

9    The Commissioner determines whether a disability applicant is credible, and the

10  court defers to the Commissioner's discretion if the Commissioner used the proper process and

11  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

12  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

13  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

14  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

15  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

16  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

17  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

18  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

19  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

20    If there is objective medical evidence of an underlying impairment, the

21  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

22  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

23  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

24    The claimant need not produce objective medical evidence of the
       [symptom] itself, or the severity thereof.  Nor must the claimant produce

25    objective medical evidence of the causal relationship between the
       medically determinable impairment and the symptom.  By requiring that

26    the medical impairment "could reasonably be expected to produce" pain or

another symptom, the <u>Cotton</u> test requires only that the causal relationship
be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
<u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,
including aggravating factors, medication, treatment, and functional restrictions.  <u>See</u> <u>Bunnell</u>,
947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the
claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent
testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a
prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)
physician and third-party testimony about the nature, severity, and effect of symptoms.  <u>See</u>
<u>Smolen</u>, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the
claimant cooperated during physical examinations or provided conflicting statements concerning
drug and/or alcohol use.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the
claimant testifies as to symptoms greater than would normally be produced by a given
impairment, the ALJ may disbelieve that testimony provided specific findings are made.  <u>See</u>
<u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling
pain not credible, the Social Security Act does not require that disability claimants be utterly
incapacitated.  <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has
repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .
does not . . .[necessarily] detract from her credibility as to her overall disability."  <u>See</u> <u>Orn v.</u>
<u>Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Heller</u>, 260 F.3d 1044, 1050 (9th
Cir. 2001)); <u>see also</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a
claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic
restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the
claimant was entitled to benefits based on constant leg and back pain despite the claimant's

1   ability to cook meals and wash dishes); <u>Fair</u>, 885 F.2d at 603 (observing that "many home

2   activities are not easily transferable to what may be the more grueling environment of the

3   workplace, where it might be impossible to periodically rest or take medication").   Daily

4   activities must be such that they show that the claimant is ". . .able to spend a substantial part of

5   his day engaged in pursuits involving the performance of physical functions that are transferable

6   to a work setting." <u>Fair</u>, 885 F.2d at 603.  The ALJ must make specific findings in this regard

7   before relying on daily activities to find a claimant's pain testimony not credible. <u>See</u> <u>Burch v.</u>

8   <u>Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

9            As to plaintiff's credibility, the ALJ stated:

10       The claimant alleges, in essence, that he is unable to work due to fusion
         and planting of the cervical spine at C5-6; continued and chronic lumbar
11       pain; left hand pain and loss of grip; headaches and general pain; an
         inability to sleep well; pain with activity; limited use of his arms; and
12       numbness in his fingers and lower arms (Exhibits 1E to 14E).  He also
         claims that, in June 2007, he began to have more hand numbness
13       associated with pain in his lower arms (Exhibit 7E).  The claimant has
         indicated that he did not work for two years after 2001 and that he tried to
14       go back to work, but that this attempt only lasted for about six months
         before he was laid off due to not being able to work due to pain (Exhibit
15       3E).

16       During the hearing, the claimant testified that he was unable to work due
         to back problems and an inability to stand or sit for any length of time.  He
17       indicated that he saw a doctor for his back twice a year.  The claimant also
         stated that he would occasionally drop things with his right hand and that
18       he had been prescribed the use of wrist braces for about a year and a half.
         He noted that his activities were limited in 2008, although he went hiking
19       and hunting with his granddaughter, fishing a couple of times on a boat for
         an hour or two, and bike riding on occasion.  The claimant also revealed
20       that he had never had surgery on his hand or wrists and that he
         occasionally smoked marijuana to relieve his pain.

21                           *   *   *

22       . . . [A]fter careful consideration of the evidence, the undersigned finds
23       that the claimant's medically determinable impairments could reasonably
         be expected to cause the alleged symptoms; however, the claimant's
24       statements concerning the intensity, persistence, and limited effects of
         these symptoms are not entirely credible to the extent they are inconsistent
25       with the above residual functional capacity assessment.  Although the
         claimant has complained of pain in his back, neck, leg, and shoulder, he
26       has not sought medical treatment.  In addition, Dr. Pliam and Dr.

                                    11

1   Tambellini opined that the claimant was able to lift and/or carry 20 pounds
    occasionally and 10 pounds frequently, with objective medical findings
2   also demonstrating that the claimant has no sensory deficits, an essentially
    normal gait, and no weakness in the extremities.  The claimant has also not
3   always been compliant with recommended treatment.  Although the
    claimant testified at his hearing that he had continued to perform
4   stretching exercises, Dr. Mu revealed that the claimant did not do his back
    stretching exercises consistently (Exhibit 13F/5).  Consequently, the
5   undersigned finds that the claimant's allegations relating to his ability to
    work are only partially credible.

6

7   The court finds no error in the ALJ's credibility analysis.  The ALJ accurately noted that, while

8   plaintiff complained of limited activity in 2008 due to pain, plaintiff went hiking, fishing,

9   hunting, and bike riding during the same period.[1]  The ALJ also noted that plaintiff had not been

10  compliant with recommended treatment.

11

12                                **IV.  CONCLUSION**

13          Based on the foregoing, the court concludes that the Commissioner's final

14  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

15  ORDERED that:

16          1.      Plaintiff's motion for summary judgment (Doc. 14) is denied;

17          2.      The decision of the Commissioner of Social Security is affirmed; and

18          3.      The Clerk of the Court is directed to enter judgment and close this file.

19

20  DATED:  March 28, 2014

21

22                                      **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE
23

24

25
_____
26      [1]      It is telling that plaintiff does not discuss this in his brief.

                                        12